UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| D&S MARINE SERVICE, LLC | CIVIL ACTION |
| VERSUS | NO. 11-508 |
| LYLE PROPERTIES, LLC | SECTION "H" (1) |

### ORDER AND REASONS

Before the Court is Defendant Lyle Properties LLC's Motion for Summary Judgment on Contractual Liability Damages (Doc. 66) and Third-Party Defendant Lawson Environmental Service, LLC's Motion for Summary Judgment (Doc. 91). For the following reasons both motions are DENIED.

### BACKGROUND

Lawson Environmental Services, LLC ("Lawson"), the Third-Party Defendant, had a direct contract with BP Exploration & Production ("BP") to perform work on the oil spill in the aftermath

1

of the blowout on the *Deepwater Horizon* in April 2010 ("BP Oil Response Project"). Lawson subsequently contracted with Lyle Properties, LLC ("Lyle"), the Defendant, in order to obtain a boat to use while performing their work with BP. Lyle then contracted with D&S Marine Services, LLC ("D&S"), the Plaintiff, for charter of the M/V DUSTIN D so that Lyle could fulfill their contract with Lawson.

On October 1, 2010–prior to the end of the contracts' term–Lawson informed Lyle that the M/V DUSTIN D was no longer needed for the BP Oil Response Project. (Docs. 66-3;66-4.) On October 4, 2010, Lyle returned the vessel to D&S and did not pay charter hire thereafter, effectively terminating the Lyle-D&S contract. (Doc. 32-1.) Subsequently, D&S chartered the M/V DUSTIN D to substitute charterers, earning $76,088.00 until it was sold on December 20, 2010. (*Id.*)

On March 3, 2011, D&S filed a Complaint against Defendant Lyle. (Doc. 1.) On April 5, 2011, Lyle answered and made a Third-Party Demand against Lawson. (Doc. 6.) This Court granted D&*S*'s Motion for Partial Summary Judgment on Liability (Docs. 21; 31), as well as its Motion for Summary Judgment on Contractual Damages (Docs. 32; 64; 65). The Court determined that Lyle breached the Lyle-D&S time charter, and as such, Lyle was obligated to pay D&S the unpaid charter hire minus stipulated deductions ($247,674.40) with one and a half percent interest per month. (Docs. 64;65.) On March 27, 2012, Lawson filed a Motion to Alter or Amend the Court's Order granting D&*S*'s Motion for Summary Judgment on Contractual Damages. (Doc. 69.) Lawson's Motion was denied on May 4, 2012. (Doc. 89.)

On March 22, 2012, Lyle filed a Motion for Summary Judgment. (Doc. 66.) Lawson opposed the Motion on April 2, 2012. (Doc. 79.)  On September 27, 2012, Lawson filed a Motion for Summary Judgment (Doc. 91), which Lyle opposed on October 9, 2012 (Doc. 92).

**LEGAL STANDARD**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2012).  A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist*., 113 F.3d 528 (5th Cir. 1997).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *CelotexCorp. v. Catrett*,

3

477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJ R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F.Supp.2d 425, 430 (E.D.La. 2005).

**LAW AND ANALYSIS**

Defendant/Third-Party Plaintiff Lyle requests summary judgment on the issues of contractual liability and damages on the basis that there are no genuine issues of material fact in dispute regarding Lawson's liability to Lyle for unpaid charter hire according to the clear terms of the Lawson-Lyle time charter. Third-Party Defendant Lawson, on the other hand, seeks dismissal of Lyle's claims on the basis that they settled all claims regarding the use and procurement of the M/V DUSTIN D. The Court finds that there are genuine issues of material fact as to the scope of the settlement agreement between Lawson and Lyle. As such, both Motions for Summary Judgment

4

are denied.

I.	*Arguments of the Parties*

Lyle argues that the Lawson-Lyle time charter is unambiguous, and enforcement of the contract's plain language establishes that Lawson is liable to Lyle for the unpaid charter hire. (Doc. 66-4.) Lyle avers that the time charter explicitly provides that Lawson agrees to pay Lyle $4,800.00 per day "from 7/12/10 to 1/12/11" to charter the M/V DUSTIN D. Lyle notes that there were no supplementary or extraneous agreements between the parties and that the time charter states that it "shall constitute the entire agreement between the parties," and "[n]o changes, amendments, or variations of the terms and conditions shall be valid or binding on the parties hereto in any respect unless made in writing and signed by both parties hereto." (*Id*.) Thus, Lyle contends that since no written agreement prematurely ended the contract or otherwise altered its terms, Lawson's failure to use the M/V DUSTIN D until the end of the contract amounts to an early termination. Accordingly, Lyle concludes that Lawson owes to it the unpaid charter hire plus interest, less the amount of charter hire paid before October 1, 2010. (*Id*.)

Lawson counters and argues that the summary judgment request must be denied because the parties entered into a settlement agreement addressing "all of their differences regarding the work done by Lyle pursuant to its dealings with Lawson and in connection with BP's Oil Spill Response Project, the brokering of the M/V DUSTIN D and other work/supplies furnished by Lyle." (Doc. 79.) Lawson alleges that there was a clear understanding between the parties that M/V

5

DUSTIN D was procured for the BP Oil Response Project and, despite the terms of the time charter, if and when BP no longer needed the vessel the contract was terminated and there was no expectation of future payments. (*Id*.) Lawson further notes that on December 16, 2010, Lawson and Lyle entered into an agreement settling all of their issues in connection with BP's Oil Response Project, and as such, Lyle cannot seek recovery under the time charter. Under the settlement agreement, Lawson avers that a final payment of $153,680.44 from Lawson resolved all monetary issues between the parties.

II.     Analysis

Charter contracts are subject to the general rules of contract interpretation. *See Marine Overseas Services, Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986). The judicial task in construing a contract is to give effect to the mutual intentions of the parties. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003). The time charter clearly provides that contractual period starts on July 12, 2010 and last until January 12, 2011. By releasing the M/V DUSTIN D from the BP Oil Response Project, Lawson effectively ceased performing under the contract prior to the specified termination date. Lawson would, therefore, be liable for the full payment of the charter hire pursuant to the terms of the contract.

Lawson points out, however, that the parties entered into a settlement agreement to resolve all monetary issues arising out of their business dealings relating to the BP Oil Response Project. Settlement agreements are treated like any other contract, and the Court must look within

6

the four corners of the document to determine the intention of the parties with regard to the scope of the settlement agreement. *Shelton v. Exxon Corp.*, 921 F.2d 595, 600 (5th Cir. 1991).

Here, the half-page settlement agreement between Lyle and Lawson is ambiguous as to what the $153,680.44 covers. The settlement agreement merely states that the parties "reached an agreement to settle their accounts for all work/materials at the Pointe Aux Chenes work site," and that the sum represents a "final payment." (Doc. 79-4.) Notably absent in their settlement agreement is a discussion of damages arising from Lawson's early termination of the time charter contract. Without express language stating that the agreement contemplated such damages, the Court is unable to declare whether the parties intended this settlement agreement to cover damages arising from the breach of the time charter contract.

Ultimately, the Court finds that a genuine issue of material fact exists as to the scope of the settlement agreement and whether the unpaid charter hire was included therein. Consequently, the Motions for Summary Judgment are denied.

**CONCLUSION**

For the foregoing reasons, Defendant Lyle Properties LLC's Motion for Summary Judgment on Contractual Liability Damages (Doc. 66), and Third-Party Defendant Lawson Environmental Service, LLC's Motion for Summary Judgment (Doc. 91) are DENIED.

New Orleans, Louisiana, on this 22nd day of October, 2012.

                                                JANE TRICHE MILAZZO
                                                UNITED STATES DISTRICT JUDGE